841 F.2d 1126
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Alan LAFFERTY, Plaintiff-Appellant,
v.
COOPERS AND LYBRAND, Defendant-Appellee.
 No. 87-3221.
 United States Court of Appeals, Sixth Circuit.
 March 8, 1988.
 
 Before ENGEL, CORNELIA G. KENNEDY and KRUPANSKY, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff-appellant Alan Lafferty appeals the summary judgment granted his employer in this age discrimination case with pendent state claims. The District Court held that plaintiff's claims were time-barred and that Lafferty would be unable to present a prima facie case. We agree with the District Court that Lafferty's claim for non-willful discrimination is time-barred but we cannot say that he will be unable to present a prima facie case of willful discrimination under Age Discrimination in Employment Act ("ADEA"), a claim not time-barred. We also hold that a pendent state claim for age discrimination was improperly dismissed. We affirm the granting of summary judgment to defendant as to the state claims of emotional distress.
 
 
 2
 Plaintiff Lafferty was informed that he was fired from his position of Director of the General Consulting Services unit of defendant's Cleveland office in March of 1984, though he remained on the payroll of defendant, a "big eight" accounting firm, for several more months. Lafferty was hired in June 1980, to open and develop this unit in Cleveland. There is a dispute as to the quality of plaintiff's work over the next three years.
 
 
 3
 Lafferty, by affidavit, claims that his termination came without warning, and that certain statements were made to him when he attempted to get an explanation. These statements were allegedly made by Joseph Bonocore, the Coopers & Lybrand partner who fired Lafferty, at various times in 1984 following Lafferty's termination. Bonocore told Lafferty that at Lafferty's age, he should not have to put up with the rigors of consulting, that his twenty-four years of consulting had left Lafferty "burned-out," and that the firm was attempting to create a new image and that Lafferty did not fit in. He said that he could hire two consultants half Lafferty's age and for half his salary, that Lafferty was an "old experienced consultant" who had nothing in common with the "young Turks" who constituted the rest of the Cleveland consulting staff. Bonocore answered Lafferty's benefits information request by telling him, jokingly, that Lafferty needn't worry since he was probably eligible for social security.
 
 
 4
 This action was filed more than two years after plaintiff was informed of his discharge, the act that he complains was illegally motivated by age discrimination. A cause of action under ADEA accrues when the plaintiff knew or should have known of the discrimination. The discriminatory act alleged here is the decision to terminate Lafferty because of his age. The Supreme Court has made it clear, in the context of other civil rights laws, that "the proper focus is on the time of the discriminatory act, not the point at which the consequences of the act become painful," Chardon v. Fernandez, 454 U.S. 6, 8 (1981) (per curiam) (emphasis in original). The nature of plaintiff's case makes it clear that he knew of the alleged discrimination at the time he was informed of his discharge, or shortly thereafter. The statute of limitations for non-willful violations of ADEA is two years, and there is no indication that the employer in any way lulled plaintiff in a way that caused him to delay asserting his rights. Indeed, plaintiff timely filed a complaint with the EEOC, as required under ADEA, but did not timely commence this action. Plaintiff argues that the employer's conduct constitutes a continuing violation because the employer has a policy of age discrimination, but this is not supported by evidence. No act of age discrimination against plaintiff after he was notified of his termination is seriously alleged. Therefore, any claim for a non-willful violation of ADEA is time-barred.
 
 
 5
 However, ADEA provides a three-year statute of limitations (as well as liquidated damages) for "willful" violations of ADEA, and plaintiff alleges that defendant's actions constitute a willful violation. In Trans World Airlines, Inc. v. Thurston, 469 U.S. 111 (1985), the Supreme Court discussed "willfulness" in the context of the liquidated damages provision.[1] The Court rejected the application of liquidated damages against a defendant who, in good faith, had committed acts which were later held to constitute age discrimination in violation of ADEA. The defendant airline in Thurston had a good faith belief that its mandatory retirement plan was legal. The Court held that more than mere knowledge of the possibility that ADEA might be "in the picture" was required to make out a willful violation. Rather, defendant had to be aware that it was violating the law, or else act in "reckless disregard" of its duties under ADEA. Similarly, in Whitfield v. City of Knoxville, 756 F.2d 455 (6th Cir.1985), this Court refused to hold an ADEA violation willful when the defendant, a city, had acted under a good faith belief that its actions were not prohibited by ADEA because ADEA could not constitutionally be applied to municipalities, and the law was then unsettled.
 
 
 6
 Defendant's reliance on these holdings is misplaced. This is not a case where the defendant could doubt whether the law applied to it or to this category of employee, as is often the situation in FLSA cases, and as was true in Thurston and Whitfield. If it is found that defendant fired Lafferty because of his age, then that discrimination can be found to be willful within the meaning of ADEA. The purpose of the liquidated damages clause was to deter intentional discrimination, Thurston 469 U.S. at 125, and presumably this rationale also explains the longer limitations period.
 
 
 7
 If plaintiff's allegations are true, the jury could find that his ADEA claim is governed by the three-year limitation period, and is not time-barred.
 
 
 8
 Prima Facie Case: The District Court also concluded that construing the evidence in the light most favorable to him, plaintiff had "presented no specific facts showing that age was a factor in the termination of his employment ... and that there are no specific facts contained in pleadings, depositions, discovery responses and affidavits filed herein which support these claims," and there were therefore no genuine issues of material fact.
 
 
 9
 As discussed above, plaintiff did point to specific facts that a reasonable jury could believe were legally sufficient evidence that defendant fired plaintiff because of his age. The statements made directly to plaintiff are admissible and probative on the issue of defendant's motive. While defendant may be able to adequately explain Lafferty's firing on non-discriminatory grounds, the District Court made no determination that this was the case. Nor was plaintiff accorded an opportunity to show that the grounds advanced by defendant are only a pretext.
 
 
 10
 Defendant argues that plaintiff has failed to make a prima facie case, because he has not fulfilled the four requirements suggested for discrimination complaints in McDonnell Douglas. Although plaintiff introduced evidence that he is a member of the protected class (individuals aged 40-70 in this case), that he was discharged, and that he was qualified for the job, he failed to show that he was replaced with (or that his discharge allowed the retention of) a non-class member, in this case a younger worker.
 
 
 11
 This Circuit has rejected such a mechanical application of the McDonnell Douglas criteria to age discrimination cases, Blackwell v. Sun Electric Corp., 696 F.2d 1176, 1179-80 (6th Cir.1983). The requirements of a prima facie case must be determined on a case-by-case basis, as the legislative history indicates, Sahadi v. Reynolds Chemical, 636 F.2d 1116, 1118 n. 3 (6th Cir.1980). This Court has cited with approval the "reasonable and flexible standard" developed by the Ninth Circuit:
 
 
 12
 To establish a prima facie case, the plaintiff must prove, by the preponderance of the evidence, that he was within the protected class ... and was performing satisfactorily, and that he was discharged "under circumstances which give rise to an inference of unlawful discrimination." This last requirement might be met "by using the McDonnell Douglas criteria ... [or by] using statistical information, direct evidence of discrimination, and circumstantial evidence other than that which is used in the McDonnell Douglas criteria."
 
 
 13
 Grubb v. W.A. Foote Memorial Hosp. Inc., 741 F.2d 1486, 1497-98 (6th Cir.1984), cert. denied, 106 S.Ct. 342 (1985) (citations omitted).
 
 
 14
 For example, a mandatory retirement age may constitute illegal age discrimination even if the victim of discrimination is not replaced at all. Plaintiff's failure to show that he was replaced by a younger employee, or that his discharge allowed the retention of such an employee, does not by itself negate his prima facie case.
 
 
 15
 Defendant also argues that plaintiff was replaced by an employee the same age as plaintiff, and that this conclusively defeats plaintiff's prima facie case. Plaintiff argues that this "replacement" was hired only much later, after it became apparent to the defendant that it would be forced to defend its conduct against the present allegations of age discrimination. Taking the evidence and reasonable inferences from the evidence in the light most favorable to plaintiff, it does not appear that plaintiff will fail to make a prima facie case as a matter of law. "The ultimate issue is whether age was a factor," and only if there is no genuine issue of material fact as to this question is summary judgment appropriate, Ackerman v. Diamond Shamrock Corp., 670 F.2d 66, 70 (6th Cir.1982).
 
 
 16
 Defendant also argues that plaintiff will be unable to show that he has sustained damages as a result of defendant's action. Defendant is confusing this issue with the question of whether plaintiff has adequately mitigated damages. Plaintiff in his deposition testified that he had turned down job offers. He was not asked, however, if these jobs were comparable to the job from which he was discharged by defendant. Defendant argues that it is up to plaintiff to show he sustained damages, and this is true. But the fact that he lost his job is enough to satisfy this requirement initially. Taking the evidence in the light most favorable to plaintiff, there is an issue of material fact as to whether he sustained damages.
 
 
 17
 Pendent State Claims: The Ohio Supreme Court has held that an age discrimination claim under Ohio Revised Code Sec. 4101.17, Ohio's age discrimination statute, requires a plaintiff to make a prima facie case under the McDonnell Douglas criteria, Barker v. Scovil, 6 Ohio St.3d 146, 451 N.E.2d 807 (1983). The Ohio Supreme Court therefore views federal ADEA decisions as appropriate sources, and cites cases of this Circuit with approval.
 
 
 18
 Although Barker seems to apply a standard that is less flexible than this Court's analyses under ADEA, we do not believe the Ohio Supreme Court would require, as an element of his cause of action, that plaintiff in this case show that he had been replaced by a younger worker. Rather, we think it would agree with this Court, in a case cited by Barker, that a "mechanical application of the McDonnell Douglas guidelines might bar the suit of a worthy ADEA claimant. In other cases, an overly mechanical application could supply an ADEA plaintiff with a triable claim where none exists," Ackerman v. Diamond Shamrock Corp., 670 F.2d 66, 70 (6th Cir.1982). The contrary language of Barker is dicta, since the case concerned the plaintiff's failure to prove she had been discharged, not the replacement criterion. We therefore think that plaintiff may make out a prima facie case of age discrimination under Ohio law.
 
 
 19
 Defendant also claims that this state claim is barred because the Ohio statutory scheme includes an election of remedies provision, citing Morris v. Kaiser Engineers, Inc., 14 Ohio St.3d 45, 471 N.E.2d 471 (1984). A party in plaintiff's position must choose whether to proceed under Ohio Revised Code Sec. 4101.17, the age discrimination provision, as plaintiff has, under section 4112.02, which is the general anti-discrimination provision, or to seek an administrative remedy under section 4112.05. This latter section refers to the Ohio Civil Rights Commission, and not the EEOC. Plaintiff, as required by federal law as a prerequisite to filing a claim under ADEA, informed the Ohio Civil Rights Commission of his charge. The charge would be processed by the EEOC and not by the state agency. There is no indication that Ohio intended to bar a plaintiff who went to the EEOC, seeking no remedy from the Ohio Civil Rights Commission, from pursuing a claim under section 4101.17 where filing with the EEOC is required for the filing of a federal claim. Defendant's interpretation would effectively mean that Ohio barred federal court pendent jurisdiction of claims under section 4101.17. Whether Ohio could do this if it wished or not, we do not believe it is the result envisioned by the Ohio legislature. The reasoning of Morris, supra, strongly supports this interpretation.
 
 
 20
 Since plaintiff may make out a prima facie case of age discrimination under Ohio law, his section 4101.17 claim should not have been dismissed.
 
 
 21
 Plaintiff's other state claims were for intentional and negligent infliction of serious emotional distress. Under Ohio law, "serious emotional distress describes emotional injury which is both severe and debilitating," though no physical injury need be manifested, Paugh v. Hanks, 6 Ohio St.3d 72, 78, 451 N.E.2d 759, 764 (1983). The tort requires that "a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case," id.
 
 
 22
 Plaintiff, in his deposition, said that he had experienced a "lack of self-confidence," a "feeling of being let down by" defendant, that he suffered "severe stress," the symptoms of which included headaches, stomach problems, and weight loss. He saw a psychiatrist who was also a social friend on six occasions, only once in the psychiatrist's office, but was never billed for professional services. Plaintiff was unable to state whether this was as a professional courtesy or because the psychiatrist did not consider what he was doing to be professional counsel. Plaintiff also consulted a physician, who prescribed medication that plaintiff believes were a tranquilizer and a stomach relaxant. However, plaintiff did not take the medication,[2] and continued to experience headaches and stomach problems as of the time of the deposition.
 
 
 23
 By way of comparison, the Ohio Supreme Court indicated the degree of seriousness required for emotional distress to be actionable by referring to "traumatically induced neurosis, psychosis, chronic depression, or phobia," id. at 78. While this list is "non-exclusive," it seems clear from the Court's discussion, which essentially concerns bystanders emotionally harmed by accidents, that Ohio law requires something much more than what plaintiff has shown.
 
 
 24
 The summary judgment as to the pendent emotional distress claims is therefore affirmed.
 
 
 25
 The judgment as to the claim of willful violation of ADEA and the pendent claim under Ohio Revised Code Sec. 4101.17 is reversed and the action is remanded to the District Court for further proceedings consistent with this opinion.
 
 
 
 [1]
 The Court was aware that the Courts of Appeal differed as to whether the meaning of willful was identical for liquidated damage purposes and for statute of limitations purposes, 469 U.S. at 128 n. 21. The Court did not resolve this question, while stating that "[e]ven if [a lower] standard were appropriate for the statute of limitations, the same standard should not govern a provision dealing with liquidated damages," id. at 127-28
 
 
 [2]
 He was not asked to explain by either counsel